IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| T-Mobile Northeast LLC,        ) | |
|           ) | |
|       Plaintiff,      ) | |
|           ) | |
|       v.           ) | Case No. 1:10-cv-117 (GBL/JFA) |
|           ) | |
| The Fairfax County        ) | |
| Board of Supervisors,      ) | |
|           ) | |
|       Defendant.      ) | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff T-Mobile Northeast LLC's ("T-Mobile") Motion for Summary Judgment and Defendant Fairfax County Board of Supervisors' (the "Board") Motion for Summary Judgment. This case is an appeal of the Board's denial of T-Mobile's two land use applications, by which T-Mobile was seeking permission to install three antenna panels on a 10-foot extension of an existing 100-foot cell phone transmission pole. The issue before the Court is whether the Board's denial of T-Mobile's applications violated the Telecommunications Act. The Court concludes that the Board's denial of T-Mobile's applications does not violate the Telecommunications Act because (1) the Board's decision was supported by substantial evidence in the record, (2) the Board's decision did not unreasonably discriminate against providers of functionally equivalent services, and (3) the Board's decision did not prohibit, or have the effect of prohibiting, personal

1

wireless services.  Accordingly, the Court grants the Board's
Motion for Summary Judgment and denies T-Mobile's Motion for
Summary Judgment.

## I. Background

T-Mobile is a Delaware limited liability company registered
to do business in the Commonwealth of Virginia.  (Compl. ¶ 1.)
T-Mobile provides wireless telecommunications services,
including voice, data, and wireless broadband internet services,
pursuant to licenses issued by the FCC.  (*Id.*)  The Board is the
governing body of Fairfax County pursuant to, *inter alia*, the
provisions of VA. CODE ANN. §§ 15.2-1400 *et seq.* (2010).  (Compl.
¶ 3, Answer ¶ 3.)

Following a public hearing on January 12, 2010, the Board
denied two related land use applications filed by T-Mobile.
(Pl.'s Mem. In Supp. of Its Mot. for Summ. J. at 3 ("Pl.'s
Mem."); Def.'s Mem. of P. & A. In Supp. of Def.'s Mot. for Summ.
J. at 1 ("Def.'s Mem.").)  T-Mobile applied to extend an
existing 100-foot transmission pole (the "Pole") by 10 feet and
to install a wireless telecommunications facility on the
extension (the "Proposed Facilities").[1]  (Pl.'s Mem. at 6-7;

---

[1] T-Mobile filed both a 2232 application and a Special Exception
application because of the nature of its Proposed Facilities.
There are three categories of review for 2232 applications in
Fairfax County, each based on the expected impact of the
telecommunications facility.  First, a Feature Shown application
is required when a land use is directly supported by the

Def.'s Mem. at 4.) The Pole sits at the intersection of the

historic scenic byway Georgetown Pike, Dolley Madison Boulevard,

and Colonial Farm Road in McLean, Virginia. (Pl.'s Mem. at 6;

Def.'s Mem. at 17; FFX-000019,[2] -000640, -000646-47.) The Pole

is one in a line of existing transmission poles located on

property that is currently used as a public right-of-way.

(Pl.'s Mem. at 6-7; Def.'s Mem. at 4, FFX-000019.) The public

right-of-way has been zoned to the R-1 District (a residential

district). (Pl.'s Mem. at 6-7; Def.'s Mem. at 4; FFX-000019.)

The area surrounding the Pole is developed primarily with

stable residential neighborhoods. (Def.'s Mem. at 4; Pl.'s Mem.

at 4; FFX-000020.) Specifically, the Evermay subdivision is

located to the South of the Pole and consists of detached,

---

County's Comprehensive Plan. This is the least burdensome
application process. In reviewing a Feature Shown application,
staff members of the Facilities Planning Branch ("FPB") of the
Fairfax County Department of Planning and Zoning provide a
report and recommendation to the Fairfax County Planning
Commission (the "Planning Commission"). If the Planning
Commission agrees with the FPB staff recommendation, approval is
granted without a hearing. Second, a 2232 application is
required for land uses not directly supported by the
Comprehensive Plan. Review of a 2232 application generally
requires a public hearing before the Planning Commission, in
addition to a FPB staff report and recommendation. Third, a
Special Exception application must be filed along with a 2232
application when the land use requires additional approval under
the County's Zoning Ordinance. This third category of review
requires a public hearing on both the 2232 application and the
Special Exception application. See Fairfax County, Virginia,
Frequently Asked Questions: 2232 Review Process (2006),
http://www.fairfaxcounty.gov/dpz/2232/2232faq.htm.
[2] References to documents beginning with "FFX" are to the
original record that was before the Board.

3

single-family dwellings.  (Def.'s Mem. at 4; Pl.'s Mem. at 10; FFX-000019, -000165.)  The Evermay subdivision is zoned to the R-1 District and the R-3 District (a residential district/three dwelling units/acre).  (Def.'s Mem. at 4; FFX-000019.)  The Evermay subdivision is the nearest residential community to the Pole.  (FFX-000224, -000621-22, -000646.)  Thus, the residents of the Evermay community are most directly affected by the visual impact of the Pole.  (FFX-000224, -000621-22, -000646.) The Pole is currently visible from the Evermay subdivision, and the Proposed Facilities would increase the Pole's visibility from the subdivision.  (FFX-000619, -000638-39,-000646.)

Currently, both Verizon Wireless ("Verizon") and AT&T Wireless ("AT&T")[3] have panel antennas located on the Pole. (Pl.'s Mem. at 7-8; Def.'s Mem. at 4-5; FFX-000020.)  In 2004, the Fairfax County Planning Commission (the "Planning Commission") approved Verizon's 2232 application to extend the Pole from 90 feet to 100 feet and to attach 12 antennas in a triangular array sticking out from the side of the Pole.[4]  (Pl.'s Mem. at 7-8; Def.'s Mem. at 5; FFX-000020.)  Because of the increase in the height of the Pole, Verizon's 2232 application

---

[3] At the time of its application, AT&T was known as Cingular Wireless.  (Pl.'s Mem. at 8, FFX-000020.)  For ease of understanding, this company will be referred to at all times as AT&T.

[4] Verizon's proposed land use did not require an additional Special Exception application.

4

was strongly opposed by members of the Evermay residential community.[5]  (Def.'s Mem. at 5; Pl.'s Mem. In Opp'n to Def.'s Mot. for Summ. J. at 8; FFX-000184, -000621-22.)

In 2006, the Planning Commission approved AT&T's Feature Shown application to install 9 panel antennas 10 feet below Verizon's antennas on the Pole.[6]  (Pl.'s Mem. at 8, 24-25; Def.'s Mem. at 5; FFX-000020.)  Like Verizon's antennas, AT&T's antennas were arranged in a triangular array sticking out from the side of the Pole.  (Pl.'s Mem. at 24-25; Def.'s Mem. at 5.) The Evermay community did not object to AT&T's application because AT&T did not seek to increase the height of the Pole. (Def.'s Mem. at 5; FFX-000184, -000622.)

On March 31, 2009, T-Mobile filed a 2232 application[7] proposing to extend the Pole by an additional 10 feet for the

---

[5] As stated above, the Evermay community consists of residents of a subdivision located to the South of the Pole.  The Pole is, and the Proposed Facilities would be, visible from the Evermay subdivision.  Therefore, the opinions and concerns voiced by the residents are relevant to the Planning Commission's and the Board's determination on all 2232 applications concerning the Pole.

[6] AT&T filed the less burdensome Feature Shown application because its land use was directly supported by the Comprehensive Plan.  See Fairfax County, Frequently Asked Questions, supra note 1.

[7] Under Virginia law, the 2232 application must demonstrate that the location, character, and extent of the proposed facilities are consistent with the County's Comprehensive Plan.  VA. CODE ANN. § 15.2-2232(A)  (2010).    FPB   staff   processes   2232 applications and the Planning Commission approves or denies the applications following a public hearing.  See Fairfax County, Frequently Asked Questions, supra note 1; (Def.'s Mem. at 3).

purpose of installing wireless telecommunications facilities. (Pl.'s Mem. at 7; Def.'s Mem. at 4; FFX-000068-70.) The extension would increase the height of the Pole, which is already the tallest pole in corridor, to a total height of 110 feet. (FFX-000646-47.) In order to make the Proposed Facilities less visually intrusive, T-Mobile sought to mount 3 panel antennas flush to the Pole and to paint the antennas the color of the Pole. (Pl.'s Mem. at 7; Def.'s Mem. at 4; FFX-000068-70.) T-Mobile concurrently filed a required Special Exception application because of the width of the proposed utility easement.[8] (Pl.'s Mem. at 10; Def.'s Mem. at 3, FFX-000403-04.)

In reviewing T-Mobile's 2232 application, staff of the Facilities Planning Branch ("FPB") of the Fairfax County Department of Planning and Zoning attended a visibility test of the Proposed Facilities conducted by T-Mobile. (FFX-000221.) The test involved raising a crane located near the Pole to a height of 110 feet. (*Id.*) The test revealed that the Pole would be more visible from nearby residential properties,

---

An applicant has the right to appeal the Planning Commission's decision to the Board. VA. CODE ANN. § 15.2-2232(B).

[8] Special Exception approval is required for land uses that "by their nature or design can have an undue impact upon or be incompatible with other uses of land." FAIRFAX COUNTY, VA., ZONING ORDINANCE § 9-001 (2010). FPB staff processes Special Exception applications, and the Board approves or denies the applications following a public hearing. *See* VA. CODE ANN. §§ 15.2-2204, 15.2-2286(A)(3); Fairfax County, Frequently Asked Questions, *supra* note 1; (Def.'s Mem. at 3-4).

including the Evermay subdivision. (*Id.*; FFX-000638-39.) Nonetheless, FPB staff recommended approval of T-Mobile's applications because it believed that the Proposed Facilities would not have a significant adverse visual impact on the nearby residential areas and public way. (FFX-000223-25.) FPB staff determined that T-Mobile's proposal to extend the height of the pole in order to 'collocate' the antennas was "consistent with the spirit and intent of the Plan . . . ."[9] (FFX-000223.) FPB staff also stated that the Proposed Facilities would blend with the buffer of vegetation and trees, as well as the existing transmission poles. (FFX-000223-25.) Ultimately, FPB staff concluded in its Report to the Planning Commission that the location, character, and extent of the Proposed Facilities were substantially in accord with the County's Comprehensive Plan. (*Id.*)

On November 5, 2009, the Planning Commission held a public hearing on T-Mobile's applications. (FFX-000613-32.) The Planning Commission considered the FPB Staff Report and presentations by both a T-Mobile representative and a representative of the National Park Service, George Washington Memorial Parkway. (FFX-000613-21, -000626-30.) The Planning Commission also considered numerous letters from members of the

---

[9] The FPB staff noted that the Proposed Facilities would "not be collocated on an *existing* pole in a literal sense . . . ." (FFX-000223.)

Evermay community, as well as the testimony of a representative of the Evermay community. (FFX-000166-80, -000182-92, -000287-309, -000621-25.) Finally, the McLean Citizens Association submitted a Resolution in support of T-Mobile's 2232 and Special Exception applications. (FFX-000612.) On November 18, 2009, the Planning Commission voted 5-0-5 to deny T-Mobile's 2232 application and to recommend that the Board deny T-Mobile's Special Exception application. (FFX-000195-201.) T-Mobile appealed the Planning Commission's denial of its 2232 application to the Board. (FFX-000366-72.)

Following the Planning Commission's denial of T-Mobile's 2232 application, FPB staff submitted an additional Consideration Item to the Board to be considered along with T-Mobile's appeal. (FFX-000313-19.) The Consideration Item noted that, although FPB staff had initially recommended approval, the Planning Commission was not required to follow the staff's recommendations. (FFX-000317-18.) Furthermore, FPB staff concluded in the Consideration Item that "a reasonable person could review the Comprehensive Plan recommendations, the subject proposal by T-Mobile, and other written information available to the Planning Commission, and conclude that the record supported a decision that [the Proposed Facilities were] not substantially in accord with the Comprehensive Plan." (FFX-000319.)

On January 12, 2010, the Board held a public hearing on both T-Mobile's Special Exception application and T-Mobile's appeal of the Planning Commission's denial of its 2232 application. (FFX-000633-48.) The Board considered the original record, including the FPB Staff Report; letters from the Evermay community; the resolution by the McLean Citizens Association; the FPB Staff Consideration Item; a presentation by a T-Mobile representative; a presentation by FPB staff; and testimony from two representatives of the Evermay community. (*Id.*) The Board concluded that T-Mobile's Proposed Facilities were not in conformance with the Comprehensive Plan and Zoning Ordinance and voted unanimously to deny T-Mobile's applications. (FFX-000648.)

On February 12, 2010, T-Mobile filed a three-count Complaint in this Court against the Board alleging violations of the Telecommunications Act of 1996 (the "TCA"). *See* 47 U.S.C. § 332(c)(7)(B)(v) (2006).[10] In Count I of the Complaint, T-Mobile alleges that the Board's denial of the 2232 and Special Exception applications was not supported by substantial evidence in the record in violation of § 332(c)(7)(B)(iii). (Compl. ¶¶ 53-60.) In Count II of the Complaint, T-Mobile alleges that the

---

[10] T-Mobile initially also named Fairfax County as a Defendant. On June 6 2010, the Court dismissed Fairfax County as a Defendant because of T-Mobile's failure to state a claim against the County upon which relief could be granted. (Dkt. No. 21.) Thus, the Board remains the sole Defendant.

Board unreasonably discriminated among providers of functionally equivalent wireless services in violation of § 332(c)(7)(B)(i)(I). (Compl. ¶¶ 61-68.) In Count III of the Complaint, Plaintiff alleges that the Board prohibited, or had the effect of prohibiting, the provision of personal wireless services in violation of § 332(c)(7)(B)(i)(II). (Compl. ¶¶ 69-76.) The Parties have filed cross-motions for summary judgment, which are now before the Court for consideration.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

10

*Anderson*, 477 U.S. at 247-48. A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III. Analysis

#### A. Substantial Evidence - 47 U.S.C. § 332(c)(7)(B)(iii)

The Court denies T-Mobile's Motion for Summary Judgment and grants the Board's Motion for Summary Judgment as to Count I because there is no genuine issue of material fact, and, as a matter of law, there is substantial evidence in the record to support a reasonable legislator's determination that T-Mobile's

11

applications were not consistent with the Comprehensive Plan and Zoning Ordinance. In addition, the Board was entitled to consider the legitimate concerns of constituents who would be most directly affected by the increased height of the Pole.

Virginia law provides that local governments may regulate "[t]he *size*, *height*, area, *bulk*, location, erection, construction, reconstruction, alteration, repair, maintenance, razing, or removal of structures . . . ." VA. CODE ANN. § 15.2-2280 (2010) (emphasis added); *USCOC of Virginia RSA #3, Inc. v. Montgomery County Bd. of Supervisors*, 343 F.3d 262, 270 (4th Cir. 2003). Under § 332(c)(7)(B)(iii), "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and *supported by substantial evidence contained in a written record*."[11] 47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added). Substantial evidence is more than a "mere scintilla" but less than a preponderance. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951); *NLRB v. Grand Canyon Mining Co.*, 116 F.3d 1039, 1044 (4th Cir. 1997). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera*,

---

[11] The Parties do not dispute that the Board's decision is contained in a written record. (Pl.'s Rebuttal Mem. in Supp. of Its Mot. for Summ. J. at 16; Def.'s Mem. of P.& A. in Opp'n to Pl.'s Mot. for Summ. J. at 24.)

12

340 U.S. at 477.

When the reasonable mind is that of a legislator, it is "not only proper but even expected that a legislature and its members will consider the views of their constituents to be particularly compelling forms of evidence, in zoning as in all other legislative matters." *AT&T Wireless PCS, Inc. v. City Council of Virginia Beach*, 155 F.3d 423, 430 (4th Cir. 1998). Although the record may contain evidence that could justify a legislature's approval of a zoning application, the repeated opposition of community members at public hearings may be sufficient "to persuade a reasonable mind to oppose the application." *Id.* at 431. However, while the number of persons expressing concern may be relevant to whether those concerns are reasonable, the number of persons alone does not make evidence substantial. *Petersburg Cellular P'ship v. Bd. of Supervisors of Nottoway County*, 205 F.3d 688, 695 (4th Cir. 2000). Moreover, community concerns that are based on speculation or conjecture do not amount to substantial evidence. *Id.*

The local legislature is best positioned to determine the proper use of land within its jurisdiction. *City of Norfolk v. Tiny House, Inc.*, 281 S.E.2d 836, 841 (Va. 1981). "If a legislative body denies a permit based on the *reasonably-founded* concerns of the community, then undoubtedly there is 'substantial evidence' to support the body's decision."

*Petersburg*, 205 F.3d at 695. A court may not substitute its judgment for that of the legislature, "even if it might have decided differently as an original matter." *Virginia Beach*, 155 F.3d at 430.

Here, the Board denied T-Mobile's land use applications because it concluded that the Proposed Facilities were not in conformance with the Comprehensive Plan and Zoning Ordinance. T-Mobile submitted both a 2232 application and a Special Exception application seeking a 10-foot extension of an existing transmission pole and the installation of three panel antennas on the extension.[12] A 2232 application must demonstrate that the proposed facilities are in conformance with the Comprehensive Plan. VA. CODE ANN. § 15.2-2232(A). Likewise, a Special Exception application must comply with Fairfax County Zoning Ordinance § 9-006. The Zoning Ordinance requires that all land uses must be (1) "in harmony with the Comprehensive Plan;" (2) "in harmony with the general purpose and intent of the applicable zoning district regulations;" and (3) "harmonious with and [not adversely affecting] the use or development of neighboring properties." FAIRFAX COUNTY, VA., ZONING ORDINANCE § 9-006 (2010).

---

[12] As explained above, T-Mobile was required to submit a Special Exception application because the Proposed Facilities were located within a relatively small utility easement on residentially zoned property.

14

Virginia law authorizes local governing bodies to adopt comprehensive plans to guide the use and development of land within their jurisdiction. VA. CODE ANN. § 15.2-2223. The Fairfax County Comprehensive Plan sets forth policies to ensure that telecommunications facilities have minimum visual impact. First, new construction is to be avoided through use of collocation[13] "when the telecommunications facilities can be placed inconspicuously to blend with such existing structures." (FFX-000314.) However, the Comprehensive Plan also states that collocation may not always be "desirable or feasible due to site limitations or visual impact concerns." (*Id.*) Second, proposed towers and monopoles are to have the "least visual impact" possible. (FFX-000220.) Third, the visual impact of telecommunications facilities is to be avoided by (1) "locating facilities near to or within mature vegetation and trees which effectively screen or provide an appropriate setting for the proposed structure" or which otherwise "mitigate their visual presence and prominence;" (2) "blending facilities with an existing pattern of tall structures;" (3) "obscuring or blocking the views of facilities . . . to the maximum extent feasible;" and/or (4) "increasing the height of or replacing existing

---

[13] A collocation is defined as "the mounting or installation of an antenna on an *existing* tower, building or structure for the purpose of transmitting and/or receiving radio frequency signals for communications purposes." 47 C.F.R. pt. 1, app. B (2010) (emphasis added).

15

structures to reduce the need for another structure when such height increases or structure replacements are appropriate to the site and the surrounding area." (FFX-000220-21.)[14]

The Board's decision did not violate § 332(c)(7)(B)(iii) because the denial was based on substantial evidence in the record, including the reasonable concerns of the Evermay residential community and the negative visual impact of the Proposed Facilities on the historic and scenic byway, Georgetown Pike. The record shows that the Board considered presentations by T-Mobile; an FPB staff presentation, Staff Report, and Consideration Item; the resolution of the McLean Citizens Association; and the testimony and letters of members of the Evermay community in opposition to the proposed 10-foot extension of the Pole because of the Proposed Facilities' new adverse visual impact. (FFX-000633-48); *see also Virginia Beach*, 155 F.3d at 431 (stating that wireless service providers seeking to build will always "come armed with exhibits, experts, and evaluations" but that to hold that such documentation mandates the approval of applications over the opposition of the "average, nonexpert citizen" would "thwart democracy").

Notably, the Board properly considered the opinions of the surrounding communities in making its decision. At the public

---

[14] Although the above list is not exhaustive of the policies set forth in the Comprehensive Plan, it comprises the policies most relevant to T-Mobile's applications.

hearing held by the Board, representatives of the Evermay
Community Association provided testimony explaining the
community's concerns.  (FFX-000633-48.)  For example, one
representative testified that the Proposed Facilities would have
a *new* negative visual impact on the community members' everyday
use and enjoyment of their yards because the Proposed Facilities
would be taller and wider than the existing line of transmission
poles.  (FFX-000644-45; *see also* FFX-000184-85.)  Although the
McLean Citizens Association submitted a resolution in support of
the applications, the Evermay community was more directly
affected by the Proposed Facilities and was unanimous in its
opposition. (FFX-000612,-000642-45.)

    The Court disagrees with T-Mobile's argument that the
concerns of the Evermay were speculative and conclusory.  The
concerns of the Evermay community were reasonable and based on
aesthetic concerns consistent with local law because they were
focused on the new adverse visual impact of the Proposed
Facilities on the residential neighborhood.  *Compare Petersburg*,
205 F.3d at 695-96 (characterizing as speculative the concerns
expressed by residents, which included pilots crashing into the
tower, boys climbing the tower, and strong winds blowing the
tower over) *with AT&T Wireless PCS, Inc. v. Winston-Salem Zoning
Bd. of Adjustment*, 172 F.3d 307, 315-16 (4th Cir. 1999) (finding
substantial evidence to deny a permit for the construction of a

148-foot antenna tower where residents of a nearby community objected on the grounds that it would change the character of the neighborhood). T-Mobile's Proposed Facilities would have been taller than any existing structure in the area and significantly taller than the surrounding tree canopy. (FFX-000646-47.) Furthermore, although T-Mobile planned to mount the antennas flush to the Pole and paint them the same color as the Pole, there was little else T-Mobile could do to mitigate the negative visual impact of the Proposed Facilities. (*Id.*) In addition, mounting the antennas flush to the Pole would make the Pole wider at the top, creating a canister-like appearance. (FFX-000046.) The FPB Staff Report confirms, and T-Mobile's representative concedes, that the Pole would be *more* visible from the Evermay subdivision if the Proposed Facilities were approved. (FFX-000638-39.) The Board was entitled to take these legitimate concerns of its constituents into serious consideration when making its determination.

It was also proper for the Board to base its decision to deny T-Mobile's applications on the fact that the Pole was located in a residential area on Georgetown Pike, which had been recently designated a scenic and historic byway. (FFX-000640-41, -000646.); *see also Winston-Salem*, 172 F.3d at 316 (noting that the board based its decision, in part, on the impact the structure would have on a nearby historical house).

Even considering the facts relied on heavily by T-Mobile, which include the FPB Staff Report that recommended approval and the size of the Evermay community,[15] it was reasonable for the Board, as a legislative body, to give greater weight to the concerns of its constituents most directly affected by the Pole, as well as the Pole's location on a historic byway. The Board's determination that the adverse visual impact of the wider, 10-foot extension to the existing Pole was not consistent with the Comprehensive Plan is supported by substantial evidence in the written record, and, therefore, the Board's denial did not violate § 332(c)(7)(B)(iii). The Court denies T-Mobile's Motion for Summary Judgment and grants the Board's Motion for Summary Judgment as to Count I.

## B. Unlawful Discrimination - 47 U.S.C. § 332(c)(7)(B)(i)(I)

The Court denies T-Mobile's Motion for Summary Judgment and grants the Board's Motion for Summary Judgment as to Count II

---

[15] T-Mobile focuses on the FPB Staff Report that recommends approval of T-Mobile's applications. (*See supra* pp. 6-7.) However, in addition to the FPB Staff Report submitted to the Planning Commission, FPB staff submitted a Consideration Item to the Board that acknowledged that, although it had recommended approval, it was nonetheless reasonable for the Planning Commission to deny T-Mobile's applications because of the Proposed Facilities' visual intrusiveness. (Def.'s Mem. at 7; FFX-000317-19.) T-Mobile also focuses on the small size of the Evermay community in comparison to the larger McLean community which supported the Proposed Facilities. As noted above, the concerns of the Evermay community carried greater weight because its members were most directly affected by an increased height in the Pole.

19

because there is no genuine issue of material fact, and, as a matter of law, the Board's denial was not unreasonably discriminatory because (1) the Proposed Facilities would have had a different visual and aesthetic impact on the Evermay residential community than the existing structure, and (2) T-Mobile's Proposed Facilities required additional approval not required of AT&T's and Verizon's proposed facilities.

Generally, State and local governments, or their instrumentalities, have broad authority to determine "the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A). However, the TCA limits this authority by prohibiting such entities from "unreasonably discriminat[ing] among providers of functionally equivalent services . . . ." *Id.* § 332(c)(7)(B)(i)(I).

The Fourth Circuit has only addressed discrimination under § 332(c)(7)(B)(i)(I) on one occasion. *See AT&T Wireless PCS, Inc. v. City Council of Virginia Beach*, 155 F.3d 423 (4th Cir. 1998).[16] In *Virginia Beach*, the Fourth Circuit held that denial of a zoning application is not unreasonably discriminatory when it is based on traditional zoning principles, such as

---

[16] Although the Fourth Circuit has only addressed the TCA's discrimination clause on one occasion, its analysis is binding precedent and not *dicta* as T-Mobile would have the Court believe because it has not been overturned, abrogated, superseded or otherwise rejected. (Pl.'s Mem. at 27.) Thus, the Court will apply the holding in *Virginia Beach* and not look to the two-prong test of the Third Circuit, as T-Mobile suggests.

"preserving the character of the neighborhood and avoiding aesthetic blight." 155 F.3d at 427. The TCA "explicitly contemplates that some discrimination 'among providers of functionally equivalent services' is allowed." *Id.* (quoting 47 U.S.C. § 332(c)(7)(B)(i)(I)).[17] Such discrimination simply must not be unreasonable. Congress intended that the discrimination clause would "provide localities with the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services." *Virginia Beach*, 155 F.3d at 427 n.3 (quoting H.R. REP. No. 104-458, at 208 (1996) (Conf. Rep.), *reprinted in* 1996 U.S.C.C.A.N. 124, 222). Furthermore, the Virginia Supreme Court has held that different zoning applications can indicate that the applicants are not similarly situated for purposes of analyzing a discrimination claim. *Bd. of Supervisors of Fairfax County v. McDonald's Corp.*, 544 S.E.2d 334, 339-40 (Va. 2001).

The Board's denial of T-Mobile's applications was not unreasonably discriminatory where it concluded that a 10-foot extension would have a different visual and aesthetic impact on

---

[17] The Parties do not dispute that T-Mobile provides telecommunications services that are the functional equivalent of Verizon's and AT&T's services. (Pl.'s Mem. at 24.)

the nearby communities than the existing 100-foot Pole. A
visibility test demonstrated that the Proposed Facilities would
tower over the tree canopy and would be significantly taller
than any other transmission pole in the surrounding area. (FFX-
000221, -000638-39; -000646-47.) The record provides
significant evidence in support of the Board's determination
that T-Mobile's Proposed Facilities create a different visual
and aesthetic impact on the Evermay residential community and
the historic and scenic Georgetown Pike. (*See* FFX-000638-39
(testimony stating that the Pole is visual from the Evermay
subdivision); FFX-000015 and -000263 (T-Mobile's site profiles
showing that the Proposed Facilities would tower over the
existing trees); FFX-000020 (FPB Staff Report noting that the
surrounding area is residential); FFX-000267, -000269-71
(photographs of the existing pole as seen from the Evermay
subdivision); FFX-000640-41 (testimony that the Pole can been
seen on Georgetown Pike, a historic and scenic byway).

   The Court is not convinced by T-Mobile's argument that its
application is the same as (and even less intrusive than)
Verizon's application because they both proposed a 10-foot
extension and collocation of antennas on the Pole. (Pl.'s Mem.
at 24-28.) First, the record does not support T-Mobile's
argument that the Proposed Facilities are merely a collocation

because the applications seek to increase the Pole by 10 feet.[18]
Even the FPB Staff Report states that "the applicant's antennas
will not be co-located on an *existing* pole in a literal sense .
. . ." (FFX-000024.) Second, a 100-foot pole is not the same
as a 110-foot pole, so it is extremely unlikely that the poles
would have the exact same visual and aesthetic impact. Finally,
T-Mobile's proposal to mount the panels flush to the Pole and
paint them grey to match the Pole does not alleviate the
problems created by the increased height of the Pole. (FFX-
000068-70.)

T-Mobile's attempt to bolster its argument by comparing its
applications to those of AT&T and Verizon is also unsuccessful
because T-Mobile improperly combines AT&T's and Verizon's
applications throughout its analysis. AT&T and Verizon sought
approval through application processes different than T-Mobile's
and, to the extent they are comparable, their applications are
easily distinguishable from T-Mobile's.[19] First, the mere fact
that Verizon's 2232 application for a 10-foot extension was
approved by the Planning Commission, despite opposition by the

---

[18] A collocation is defined as "the mounting or installation of
an antenna on an *existing* tower, building or structure for the
purpose of transmitting and/or receiving radio frequency signals
for communications purposes." 47 C.F.R. pt. 1, app. B (emphasis
added). T-Mobile misleadingly references the meaning of a
"[s]ubstantial increase in the size of the tower" found in the
same section of the regulations. *Id.*;(Pl.'s Mem. at 26-27).
[19] *See* Fairfax County, Frequently Asked Questions, *supra* note 1.

23

Evermay community, does not require the Board to approve every subsequent application to extend the height of the Pole by 10 feet.[20] It is not unreasonable for the Evermay community to object to both the existing Pole *and* any additional increases in height.

Second, unlike Verizon's and T-Mobile's applications, AT&T's application was a true collocation that did not involve an increase in the height of the Pole. (FFX-000020.) AT&T was only required to file a Feature Shown application, and not a 2232 application, because its land use was directly supported by the Comprehensive Plan.[21] (FFX-000020.) As a result, the Planning Commission's review of AT&T's application did not involve a public hearing. Nonetheless, the Evermay community did not oppose AT&T's proposed facilities because they did not create a significantly different visual or aesthetic impact on the surrounding area. (FFX-000184, -000622.)

Finally, T-Mobile was required to file a separate Special Exception application in addition to the standard 2232 application. The Special Exception application required additional approval under Fairfax County's Zoning Ordinance that

---

[20] During oral argument, T-Mobile agreed that at some undetermined height the denial of an application for an additional 10-foot extension of the Pole would cease to be discriminatory because the proposed facilities would no longer be similarly situated to the proposed facilities of previous applicants.

[21] *See* Fairfax County, Frequently Asked Questions, *supra* note 1.

was not required of either Verizon or AT&T. Specifically, T-Mobile was required to demonstrate that its Proposed Facilities would be "harmonious with and [would] not adversely affect the use . . . of neighboring properties." FAIRFAX COUNTY, VA., ZONING ORDINANCE § 9-006.[22]

Therefore, despite the Board's approval of Verizon's and AT&T's applications, the Board's denial of T-Mobile's application was not unreasonably discriminatory because T-Mobile's Proposed Facilities would have had a different visual and aesthetic impact on the Evermay residential community, and the approval process for the three service providers was different. The Court denies T-Mobile's Motion for Summary Judgment and grants the Board's Motion for Summary Judgment as to Count II.

## C. Effective Prohibition - 47 U.S.C. § 332(c)(7)(B)(i)(II)

The Court denies T-Mobile's Motion for Summary Judgment and grants the Board's Motion for Summary Judgment as to Count III

---

[22] The Board states that the Fourth Circuit has interpreted the discrimination clause to contain an animosity requirement. (Def.'s Mem. at 21.) Specifically, that there is no discrimination "[w]here there is no animosity expressed towards the provider of personal wireless services in general . . . ." (Id.) In support, the Board cites *Virginia Beach*, which states that "[n]one of those who testified suggested any ill will toward appellees, nor did any of them demonstrate dislike for digital service as opposed to analog." 155 F.3d at 428. This language on its own is not sufficient to conclude that the Fourth Circuit intended to interpret the discrimination clause of the TCA as requiring a showing of animosity towards the provider.

because there is no genuine issue of material fact and, as a matter of law, under the Fourth Circuit's standard, T-Mobile fails to demonstrate that the Board's denial has the effect of prohibiting personal wireless services because (1) the Board has previously approved numerous T-Mobile applications; (2) T-Mobile currently provides coverage throughout the area; and (3) T-Mobile fails to demonstrate that no feasible alternative exists.

In addition to prohibiting discrimination among providers of functionally equivalent services as discussed in the previous section, the TCA limits the authority of State and local governments, and their instrumentalities, to regulate "the placement, construction, and modification of personal wireless service facilities" by forbidding such entities from prohibiting, or having the effect of prohibiting, the provision of personal wireless services. 47 U.S.C. § 332(c)(7)(A), (B)(i)(II). "[L]ocal policies or general bans against any siting of wire-less service facilities would violate [§ 332(c)(7)(B)(i)(II)]." *360° Communications Co. of Charlottesville v. Bd. of Supervisors of Albemarle County*, 211 F.3d 79, 86 (4th Cir. 2000). Similarly, "indications by a local government that repeated individual applications will be denied because of a generalized hostility to wireless services could also violate [§ 332(c)(7)(B)(i)(II)]." *Id.*; *see also Virginia Beach*, 155 F.3d at 429 (concluding that "policies that do not

explicitly ban new service but do, when applied on a case-by-case basis, guarantee the rejection of every application" would be in violation of the prohibition clause of the TCA). Conversely, a State or local government may affirmatively demonstrate that it is not hostile to wireless services, or a particular service provider, where it can point to a record of approving wireless applications in general, as well as for that provider. *Albemarle County*, 211 F.3d at 88.

"To be entitled to relief under a [§ 332(c)(7)(B)(i)(II)] prohibition of service claim, the plaintiff's burden is substantial." *USCOC of Va. RSA #3, Inc. v. Montgomery County Bd. of Supervisors*, 343 F.3d 262, 268 (4th Cir. 2003). The court must consider the circumstances of a particular application to determine whether the denial has the effect of prohibiting wireless services. *Albemarle County*, 211 F.3d at 86-87. Generally, denial on its own, with respect to a particular site, is not enough to demonstrate effective prohibition. *Id.* Although it may be possible for the denial of a particular application to produce the effect of prohibiting service in violation of the TCA, the burden on the plaintiff to demonstrate a prohibition of service in such a case is particularly heavy when the plaintiff is already providing service to the area. *Id.* The TCA cannot be construed to require that wireless services provide 100% coverage. *Id.* at 87.

Rather, the effective prohibition clause only addresses a *prohibition* of services. *Id.* at 88 n.1 (citing *Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630, 643 (2d Cir. 1999)).

The plaintiff must also show "that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." *Albemarle County*, 211 F.3d at 88 (quoting *Town of Amherst v. Omnipoint Commc'ns Enters., Inc.*, 173 F.3d 9, 14 (1st Cir. 1999)). The plaintiff must present evidence demonstrating that there are no feasible alternatives. *Id.* at 87-88. However, the plaintiff cannot meet this burden by merely showing that the alternative sites do not provide the same quality of wireless service or are more costly. *Id.* at 87.

First, in considering this issue, the Court addresses the Parties' arguments as to the applicable standard and holds that the effective prohibition standard of the Fourth Circuit described above controls this analysis. The Fourth Circuit's standard described above is binding precedent, as it has not been overturned, abrogated, superseded, or otherwise rejected. As T-Mobile concedes, in setting forth its standard, the Fourth Circuit has explicitly rejected the significant gap/least intrusive means analysis because it "unduly limit[s] what is essentially a fact-bound inquiry." *Id.* at 87.[23] The Court of

---

[23] The Fourth Circuit has rejected the substantial gap/least intrusive means analysis. Accordingly, it is unnecessary for

Appeals further explained that "[a] community could rationally reject the least intrusive proposal in favor of a more intrusive proposal that provides better service or that better promotes commercial goals of the community." *Id.*

In addition, the Court is not persuaded by T-Mobile's suggestion that a recent FCC Ruling applies, rejects the Fourth Circuit's standard, or otherwise impacts the Court's analysis. The FCC Ruling upon which T-Mobile relies neither rejects the effective prohibition standard of the Fourth Circuit nor advocates acceptance of the substantial gap/least intrusive means analysis applied in the Second, Third, and Ninth Circuits. *See In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances that Classify All Wireless Siting Proposals as Requiring a Variance,* Declaratory Ruling, 24 F.C.C.R. 13994, 2009 WL 3868811, ¶¶ 56-65 (Nov. 18, 2009). The FCC Ruling prohibits only the use of the one-provider rule utilized in some courts, explaining it is possible for a denial of a particular application to prohibit service in violation of the TCA where the denial is based solely

the Court to address the Board's objections to the declarations because T-Mobile submitted them primarily for purposes of that analysis. Where the declarations are cited elsewhere in T-Mobile's briefs, they are not material to the issue and do not alter the Court's analysis under the law.

on the presence of other wireless service providers in the area. *Id.* ¶ 60. The FCC further emphasized that

> nothing we do here interferes with [State and local authorities'] consideration of and action on the issues that traditionally inform local zoning regulation. Thus, where a *bona fide* local zoning concern, rather than the mere presence of other carriers, drives a zoning decision, it should be unaffected by our ruling today.

*Id.* ¶ 62. Thus, the FCC's criticism of the Fourth Circuit's "blanket ban requirement" as set forth in *Virginia Beach* is limited in context to the one-provider rule and does not reject the holding in its entirety. *Id.* ¶¶ 60-62.

Here, the Board's decision was based on traditional zoning principles and not on the presence of other service providers. Therefore, the one-provider rule is not implicated. It is unnecessary for the Court to address whether the Ruling is entitled to deference because it has no effect on the analysis of the facts in this case as the FCC Ruling does not establish a national standard for determining what actions of State and local governing bodies constitute an effective prohibition of wireless services.[24]

---

[24] T-Mobile argues that two district courts have adopted the substantial gap/least intrusive means analysis as a result of the FCC's ruling. *See Clear Wireless, LLC v. City of Wilmington*, No. 10-218—MPT, 2010 WL 3463729, at *2-*3 (D. Del. Aug. 30, 2010); *Liberty Towers, LLC v. Zoning Hearing Bd. of Lower Makefield*, No. 10-1666, 2010 WL 3769102, *6 (E.D. Pa. Sept. 28, 2010). While not binding, these opinions may be instructive if applicable. However, both decisions specifically

T-Mobile fails to meet its burden under the Fourth Circuit standard of demonstrating that the Board's denial of its applications resulted in a prohibition of service because T-Mobile failed to demonstrate that the Board's denial of a particular application has the effect of prohibiting service. An effective prohibition of service may be demonstrated by showing: (1) that the Board has a history of rejecting applications for all wireless facilities, in general, or T-Mobile's applications, in particular; (2) that T-Mobile has an absence of coverage in the area; or (3) that there are no feasible alternative sites for T-Mobile's wireless telecommunications facilities.[25]

First, T-Mobile does not offer any evidence, or even allege, that the Board is hostile to personal wireless services generally or T-Mobile in particular. Further, T-Mobile does not argue that the Board would deny all future applications so that it would be a waste of time for T-Mobile to submit them. On the contrary, the Board has a record of granting telecommunications facilities siting applications. Specifically, the Board states,

address the one-provider rule and hold only that the FCC Ruling explicitly rejects the one-provider rule as violating the prohibition clause of the TCA. Neither decision stands for the proposition that the FCC Ruling established a national standard for prohibition of services claims.

[25] Although T-Mobile provides argument under the substantial gap/least intrusive means analysis only, the record clearly demonstrates that T-Mobile cannot meet its burden under the Fourth Circuit's standard.

and T-Mobile does not dispute, that it has approved over 550 total applications in the past 5 years, 130 of which were for T-Mobile's telecommunications facilities. (Def.'s Rebuttal Mem. of P. & A. In Supp. of Def.'s Mot. for Summ. J. at 12; Marshall Decl. ¶ 7.) The record also indicates that there are other T-Mobile facilities in the area. (FFX-000925.)

Second, T-Mobile has existing coverage in Fairfax County. (FFX-000045, -000047, -000925, -000928.) T-Mobile argues that it has a substantial gap, or absence of service, because it lacks sufficient service to provide complete in-building and in-vehicle coverage to an area comprised of a major commuter highway (Dolley Madison Blvd/Georgetown Pike) and developed residential neighborhoods. (Pl.'s Mem. at 18-19; FFX-000046.) T-Mobile's applications sought only to improve and enhance its service in the area by providing in-building and better in-vehicle coverage. (FFX-000046.) The applications do not indicate, nor does T-Mobile allege, that there is complete absence of T-Mobile's wireless service in the area. (Id.; FFX-000925.)

Third, the Board identifies at least one potential alternative for T-Mobile's telecommunications facilities that T-Mobile does not adequately address. The Board suggests that T-Mobile could explore the option of constructing a new pole in Langley Fork Park. (Def.'s Mem. of P. & A. In Opp'n to Pl.'s

Mot. for Summ. J. at 19-20.) A representative of the National Park Service testified that monopoles had been approved on Langley Fork Park in the past and that they "would be open to receiving the proposal." (FFX-000629.) Additionally, as T-Mobile is aware, the Fairfax County Park Authority only prohibits telecommunication towers from being located in Langley Fork Park until all other reasonable alternatives have been ruled out. (FFX-000243.) The fact that this alternative location may be more costly or difficult to secure for T-Mobile is not sufficient to produce the effect of a prohibition of service in violation of the TCA.

The Court is not persuaded by T-Mobile's attempt to address the Boards suggestion by asserting that it "investigated over a dozen alternative sites [and] established that all of the alternative sites were either not technically feasible, not practically available, or not consistent with the Comprehensive Plan." (Pl.'s Mem. at 21; FFX-000024, -000059, -000084.)[26] The Comprehensive Plan does not support T-Mobile's claim that the Proposed Facility is the only viable alternative because it is a collocation that does not involve the creation of a new

---

[26] The original record only shows four alternative locations. However, T-Mobile indicates that it considered more than four locations. (Pl.'s Mem. at 5-6.) Regardless of whether T-Mobile considered four or twelve alternative locations, the Fourth Circuit standard only requires that there be one alternative that may be more preferable to the community.

structure. (Pl.'s Mem. at 22.) On the contrary, the Comprehensive Plan simply states that collocation is preferable. (FFX-000314 (stating that a new structure may be preferable when collocation is not desirable due to visual impact concerns).) Moreover, this argument is not applicable to the prohibition analysis. The Board may deny T-Mobile's applications without violating the prohibition clause so long as T-Mobile is able to provide service, whether at its current level or at a higher level by constructing its wireless facilities in an alternative location. The record clearly shows that T-Mobile is currently providing coverage in the area. Additionally, the burden is on T-Mobile, not the Board, to demonstrate that no other alternatives for enhancing coverage exist, so that denial of these particular applications would violate the prohibition clause of the TCA. Here, T-Mobile fails to meet this burden.

The Board's denial of T-Mobile's applications does not violate the prohibition clause of the TCA. The Board not only has a history of granting applications of wireless service providers, but it has a strong history of granting T-Mobile's applications in particular. While its wireless coverage is not 100%, T-Mobile does indeed have coverage in the area. Finally, T-Mobile fails to demonstrate that there are no alternative locations for enhancing its existing coverage. The Court denies T-Mobile's Motion for Summary Judgment and grants the Board's

Motion for Summary Judgment as to Count III.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the Board's denial of T-Mobile's applications does not violate the Telecommunications Act because (1) the Board's decision was supported by substantial evidence in the record, (2) the Board's decision did not unreasonably discriminate against providers of functionally equivalent services, and (3) the Board's decision did not prohibit, or have the effect of prohibiting, personal wireless services. The Court grants the Board's Motion for Summary Judgment and denies T-Mobile's Motion for Summary Judgment. Accordingly, it is hereby

ORDERED that Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED.

The Clerk is directed to ENTER JUDGMENT in favor of Defendant Fairfax County Board of Supervisors and against Plaintiff T-Mobile Northeast LLC pursuant to Federal Rule of Civil Procedure 58. A separate Rule 58 Judgment Order will be entered with the Memorandum Opinion.

The Clerk is directed to forward a copy of this Order to counsel of record.

Entered this ___/17___ day of December, 2010.

Alexandria, Virginia
12//17 /2010

_____/s/_____
Gerald Bruce Lee
United States District Judge

35